IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF WEST VIRGINIA
AT BECKLEY

JAMES L. SHUFF and
LISA K. SHUFF, individually
and behalf of all other individuals
similarly situated,

      Plaintiffs,

v.                                       CIVIL ACTION NO. 5:20-cv-00184

BANK OF AMERICA, N.A,
SAMUEL I. WHITE, P.C.

      Defendants.

## CLASS ACTION TO STOP FORECLOSURES

1.    This is a class action to temporarily stop foreclosures in West Virginia during the national emergency caused by the spread of the COVID-19 virus. During this nationally declared emergency, foreclosures cannot be conducted at an appropriate time consistent with the contracts governing the foreclosures (deed of trust), the common law of West Virginia, and the statutory framework provided for non-judicial foreclosure sales.

2.    The individual named Plaintiffs, James and Lisa Shuff, were victimized by a predatory lending scheme perpetrated in concert by a manufactured housing retail dealer and Countrywide Home Loans, Inc., whereby the dealer and lender originated a fraudulent home loan that far exceeds the actual value of the property. Countrywide's successor in interest, Defendant Bank of America, N.A. increased the indebtedness to over $142,000 (more than double the value of the property) and seeks to enforce a fraudulently originated lien and has rejected and refused the Plaintiffs' payments and seeks to foreclose on the home in violation of the contract and law. Plaintiffs bring this action individually to stop the needless foreclosure and to quiet title as to the

1

validity of the lien on their home. The bring the action on behalf of all other West Virginia homeowners facing a foreclosure sale during the nationally and state declared emergency caused by the outbreak of the COVID-19 virus to obtain a temporary injunction to continue the sales set during this time of crisis.

## PARTIES

3. <u>Plaintiffs:</u> Plaintiffs James and Lisa Shuff are a married couple that live in a fifteen-year-old manufactured home located 4031 Rogers Street, Oak Hill, WV 25901.

4. <u>Lender and Current Servicer</u>: Defendant Bank of America, N.A. ("BANA") was the originating lender of Plaintiffs' loan, as successor in interest to Countrywide Home Loans, Inc., and is the current servicer. At all relevant times BANA was and is a national bank doing business in Fayette County, West Virginia with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28202.

5. <u>Foreclosure Trustee</u>: Defendant Samuel I. White, P.C. is the substitute foreclosure trustee that was engaged by BANA to conduct a foreclosure sale of Plaintiffs' property on March 16, 2020 at 2:00 p.m. It has several offices in West Virginia and a principal place of business located at 5040 Corporate Woods Drive, Suite 120, Virginia Beach, Virginia, 23462.

## STATEMENT OF FACTS

6. Plaintiffs purchased their current manufactured home and the land it is situated in July 2005.

<u>Origination of Fraudulent and Illegal Home Secured Loan</u>

7. In 2005 Plaintiffs went to a mobile home dealer in Oak Hill looking to purchase a new manufactured home.

8. The Plaintiffs were directed to a 2005 model Fleetwood Inspiration.

9. The salesperson represented that he could get the home financed through Countrywide Home Loans, Inc. and represented that amount of the payment.

10. Thereafter, the salesperson took the Plaintiffs' personal information and took and application for credit, which it sent on to Countrywide Home Loans, Inc. to finance the sale of the home.

11. The sales person then drew up a contract for the purchase of the home and charged $93,082.15 for the purchase of the home. This amount was far in excess of the actual value of the home. Presently, the home is valued at approximately $33,000.

12. The salesperson informed the Plaintiffs that Countrywide would finance the purchase of the lot upon which the home would be situated as well.

13. On information and belief, Countrywide arranged for a valuation of Plaintiffs' home with an appraiser who has a reputation for providing bogus, inflated appraisals.

14. Countrywide obtained an appraisal indicating that the home and land would be valued at $107,000. This amount was false and wildly inflated.

Closing at Pizza Hut in Putnam County

15. Thereafter, the Plaintiffs were directed to meet an agent of Countrywide at the Pizza Hut in Hurricane, West Virginia to sign the papers on July 5, 2005.

16. The Plaintiffs had to bring their two boys with them to this "closing."

17. The closing was rushed and not conducted in an appropriate place where the Plaintiffs could ask questions about the transaction.

18. No attorney attended the closing or was made available for the Plaintiffs to ask questions.

19. The documents signed by the Plaintiffs at the Pizza Hut provided the for a construction loan in the amount of $101,650.00 and secured by the Plaintiffs' home and land.

20. A month later, Countrywide later converted the construction credit line into a conventional loan in August 2005 with a total loan amount of $103,377.

21. In 2010, BANA increased the indebtedness on the loan to $142,636.70. On information and belief, at the time the home and land were valued at less than 50% of this amount.

Abusive and Illegal Loan Servicing

22. At some point, the loan and servicing were assigned to Defendant BANA.

23. James Shuff was injured at the workplace and had surgery in the spring of 2018, which caused a temporary change in the Plaintiffs' income.

24. The Plaintiffs contacted BANA and requested payment assistance with their loan based on the temporary change of income.

25. The Plaintiffs were provided a Trial Payment Plan, which provided that the Plaintiffs would make three monthly payments of $1,107 beginning in December 2018.

26. The Plaintiffs timely made their three monthly trial plan payment as required.

27. However, BANA represented to the Plaintiffs that it did not receive their third payment in February 2019. This was false. BANA's agent had signed for a certified receipt that it received the payment.

28. Lisa Shuff contacted BANA to inquire of the status of the loan modification within a few days of the last trial plan payment in early February 2019.

29. A BANA representative informed Ms. Shuff that they in fact received the payment, but if did not post and there was no way that the payment could be posted to the account.

30. BANA then invited the Plaintiffs to re-apply for another loan modification.

31. Over the course of 2019, BANA continually requested more information from the Plaintiffs to consider their loan modification application. BANA repeatedly requested documents it had previously been provided and unreasonably delayed consideration of their application.

32. During this time, BANA refused Plaintiffs' payments. BANA representatives informed Plaintiff in telephone conversations that it would not accept payments on the loan until the loan modification was approved.

33. BANA returned certain payments made by Plaintiffs during this time, rather than apply them against amounts due.

34. BANA then sought to foreclose on Plaintiffs' home by foreclosure sale date set for March 16, 2020 at 2:00 p.m. despite the Plaintiffs' willingness and ability to pay.

35. The Plaintiffs presently have the ability to pay their monthly loan payment, but BANA refuses to accept payments. They do not have the ability to pay the total amount of arrearage as BANA requires.

36. By letter dated March 16, 2020, Plaintiffs sent notice to BANA notifying it their violations of the West Virginia Consumer Credit and Protection Act, and providing them 45 days to cure the violations. Defendants are aware of the notice but have refused to continue the foreclosure sale.

Class Allegations

37. On March 13, 2020, President Donald J. Trump declared a national emergency arising out of the global pandemic brought on by the spread of the novel Coronavirus Disease, COVID-19.

38. On the same day, Governor Jim Justice ordered the closing of all West Virginia schools indefinitely to prevent the further spread of the COVID-19 virus.

39. The governor of the State of West Virginia, the National Center for Disease Control, and the President's task force have advised citizens to institute social distancing and other safety measures intended to curb the spread of the COVID-19 virus.

40. Given the circumstances, it is inappropriate to conduct non-judicial foreclosure sales because the public auctions cannot be conducted consistent with the principles of an appropriate time, place and manner of a commercially reasonable public auction, as required under West Virginia law and the parties' contracts.

41. Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class consists of all West Virginia borrowers whose loans are serviced by BANA or who have SIWPC as a foreclosure trustee, whose loans are set for foreclosure sale any time after that date 120 days following the filing of this action.

42. The requirements of Rule 23 are satisfied as follows:

    (a) The class is so numerous joinder of all members is impracticable;

    (b) There are questions of law and fact common to all members of the class; and

    (c) The named Plaintiffs' claims are typical of those of the class as a whole.

43. The Plaintiffs have displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interests of the class, and are represented by skillful and knowledgeable counsel. The relief sought by the named Plaintiffs will inure to the benefit of the class generally.

44. The Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive, declaratory and other relief appropriate for the class as a whole.

## CLAIMS FOR RELIEF

### COUNT I – TEMPORARY INJUNCTION TO STOP WEST VIRGINIA FORECLOSURES

45. The Plaintiffs incorporate the previous paragraphs by reference.

46. The parties' contract, the Deed of Trust, and West Virginia law provide that any foreclosure sale be conducted at a public auction.

47. It is axiomatic that the purpose of a public auction is to bring the best possible price for the property.

48. Commercially reasonable standards attendant to foreclosure sales provide that such sales be conducted at an appropriate time, place, and manner.

49. Given the national emergency caused by the COVD-19 outbreak, and the direction by government and health officials that citizens self-quarantine and practice social distancing to the extent possible, foreclosure sales during this crisis cannot meet commercially reasonable standards

50. A preliminary injunction is necessary in order to prevent the Defendants from conducting a foreclosure sale at a time and manner inconsistent with commercially reasonable standards.

51. The Plaintiffs have demonstrated they will suffer irreparable harm if the Court does not issue a preliminary injunction.

52. There is little if any harm to the defendant.

53. There is no other adequate remedy at law.

54. The plaintiffs are likely to succeed on the merits.

55. A preliminary injunction would be in the public interest.

**WHEREFORE**, the Plaintiffs respectfully request the following relief:

(a) That this Court issue a temporary restraining order enjoining the foreclosure sale on Plaintiffs' property set for March 16, 2020 at 2:00 p.m. until further order of the Court;

(b) That this Court issue an order to show cause why a temporary restraining order should not be entered halting all West Virginia foreclosures set by Defendants for the next 120 days.

## INDIVIDUAL CLAIMS

### COUNT II - FRAUD AS A DEFENSE TO CONTRACT

56. Plaintiff incorporates the preceding paragraphs by reference.

57. The loan was originated based on an intentionally inflated appraisal, which misrepresented to the Plaintiffs that their property was valued at approximately $107,000. This was false.

58. The actual value of the home and land was substantially less than this amount. The current value of the home is approximately $33,000.

59. The lender's misrepresentations and suppressions of the value of the Plaintiffs' home were material, and they were intentional, knowing or reckless.

60. The Plaintiff reasonably relied on the value as misrepresented to them by originating lender.

61. Had the Plaintiffs been aware that their property was not valued at $107,000, they would have never agreed to enter into the loan.

62. The Plaintiffs were damaged by their reliance on this belief in the honesty of the loan originator and appraiser.

### COUNT III – CONTRACT DEFENSE OF ILLEGAL LOAN

63. Plaintiffs incorporates the preceding paragraphs by reference.

64. The subject loan was willfully made with a principal amount that exceeded the fair market value of the property on the date the residential loan was made in violation of West Virginia Code § 31-17-8(m)(8).

### COUNT IV – COMMON LAWCONTRACT DEFENSE OF UNCONSCIONABLE CONTRACT

65. Plaintiffs incorporate the preceding paragraphs by reference.

66. Plaintiffs and the lender occupied dramatically unequal bargaining positions, including that:

(a) The Plaintiffs are unsophisticated consumers.

(b) The lender was a large national lender engaged in the business of making and servicing home-secured consumer credit transactions.

67. The lender unconscionably induced the Plaintiffs to enter into the loan by obtaining an inflated valuation of the home in 2005.

68. Defendant BANA unconscionably induced the Plaintiffs to enter into the modification in 2010 for $142,636.70, and amount that was more than twice the actual value of their home and land.

69. The loan and modification were unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct, and therefore was unenforceable.

### COUNT V – REMOVAL OF CLOUD ON TITLE

70. Plaintiffs incorporate the preceding paragraphs by reference.

71. The lien arising out of the fraudulent, illegal, and unconscionable loan and modification, as alleged hereinbefore, constitutes a cloud on Plaintiffs' title.

## COUNT V – BREACH OF CONTRACT

72. Plaintiffs incorporates the previous paragraphs by reference.

73. The law of contracts implies a duty of good faith and fair dealing into a party's exercise of its discretion under a contract.

74. Plaintiffs' contract with Defendant (the Deed of Trust) provides Defendant with the discretion to enter into loss mitigation, such as loan modification, with Plaintiffs prior to pursuing foreclosure.

75. Beginning in April 2009 and thereafter, it has been industry practice to engage in loss mitigation prior to pursuing foreclosure.

76. The Defendant BANA breached their duties under the contract, including its duties to exercise its discretion in good faith, and thereby breached the contract by:

(a) breaching their temporary payment plan with Plaintiffs;

(b) discouraging Plaintiffs from providing payments to their account;

(c) refusing to accept payments; and

(d) soliciting applications for assistance from Plaintiffs and refusing their application in bad faith.

77. Defendants' breach of contract has injured the Plaintiffs, including denying them the ability to save her home from foreclosure and retain their investment in the home.

## COUNT VI – EQUITY ABHORS A FORFEITURE

78. Plaintiffs incorporates the pervious paragraphs by reference.

79. Defendant BANA has the ability to enforce their right to repayment of the debt through means other than the forfeiture of Plaintiffs' home.

80. Defendant has refused to exercise their rights to repayment through alternative means, such as through the promised loan modification, and instead seeks to wrongfully foreclose on Plaintiffs' home.

**WHEREFORE**, Plaintiffs seeks the following relief:

(a) The Court enjoin Defendants from conducting a foreclosure sale of Plaintiff's property, located at 4031 Rogers Street, Oak Hill, WV 25901, until further Order of the Court; and

(b) All declaratory, equitable and other relief as may be reasonable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

    Plaintiffs,
    **JAMES L. SHUFF and**
    **LISA K. SHUFF**,
    By Counsel:

/s/ Bren J. Pomponio
Bren J. Pomponio (WVSB #7774)
Daniel F. Hedges (WVSB # 1660)
Rachel J. Kincaid (WVSB # 13726)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-3144
Facsimile: (304) 344-3145
*Counsel for Plaintiff*