IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF WEST VIRGINIA
AT BECKLEY

JAMES L. SHUFF and
LISA K. SHUFF, individually
and behalf of all other individuals
similarly situated,

        Plaintiffs,

v.                                          CIVIL ACTION NO. 5:20-cv-00184

COUNTRYWIDE HOME LOANS, INC.,
BANK OF AMERICA, N.A, individually
and doing business as BAC Home Loans, LP,
and SAMUEL I. WHITE, P.C.

        Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT TO STOP FORECLOSURES

1.    This is a class action to temporarily stop foreclosures in West Virginia during the national emergency caused by the spread of the COVID-19 virus. During this nationally declared emergency, foreclosures cannot be conducted at an appropriate time consistent with the contracts governing the foreclosures (deed of trust), the common law of West Virginia, and the statutory framework provided for non-judicial foreclosure sales.

2.    The individual named Plaintiffs, James and Lisa Shuff, were victimized by a predatory lending scheme perpetrated in concert by a manufactured housing retail dealer and Countrywide Home Loans, Inc., whereby the dealer and lender originated a fraudulent home secured loan that then and now exceeds the actual value of the property. Countrywide's successor servicer, Defendant BAC Home Loans Servicing, LP increased the indebtedness to over $142,000 (more than double the value of the property) and seeks to enforce the lien, has rejected and refused the Plaintiffs' payments, and seeks to foreclose on the home in violation of the contract and law.

1

Plaintiffs bring this action individually to stop the needless foreclosure and to quiet title as to the validity of the lien on their home. The bring the action on behalf of all other West Virginia homeowners facing a foreclosure sale during the nationally and state declared emergency caused by the outbreak of the COVID-19 virus to obtain a temporary injunction to continue the sales set during this time of crisis.

## PARTIES

3. <u>Plaintiffs:</u> Plaintiffs James and Lisa Shuff are a married couple that live in a fifteen-year-old manufactured home located 4031 Rogers Street, Oak Hill, WV 25901.

4. <u>Originating Lender:</u> Defendant Countrywide Home Loans, Inc. ("Countrywide") was the originating lender of the Plaintiff's loan. It had a principal place of business located at 4500 Park Granada, Calabasas, California, 91302. Defendant Bank of America, N.A. ("BANA") is the successor in interest to Countrywide and subject to all claims and defenses Plaintiffs' may have arising out of the origination of the loan.

5. <u>Successor Servicer:</u> Defendant BAC Home Loans Servicing, LP was the successor servicer to Countrywide. Its mailing address at all times relevant to this action was P.O. Box 10266, Van Nuys, California, 91410. Defendant BANA is the successor in interest to BAC Home Loans Servicing and subject to all claims an defenses the Plaintiffs may have arising out of the servicing and modification of the loan.

6. <u>Current Servicer:</u> Defendant BANA is the current servicer of Plaintiffs' loan. At all relevant times BANA was doing business in Fayette County, West Virginia with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28202.

7. <u>Foreclosure Trustee</u>: Defendant Samuel I. White, P.C. is the substitute foreclosure trustee that was engaged by BANA to conduct a foreclosure sale of Plaintiffs' property on March

16, 2020 at 2:00 p.m. It has several offices in West Virginia and a principal place of business located at 5040 Corporate Woods Drive, Suite 120, Virginia Beach, Virginia, 23462.

## STATEMENT OF FACTS

8. Plaintiffs purchased their current manufactured home and the land on which it is situated in mid-2005.

Origination of Fraudulent and Illegal Home Secured Loan

9. In May 2005, Plaintiffs went to a mobile home dealer in Oak Hill looking to purchase a new manufactured home.

10. The Plaintiffs were directed to a 2005 model Fleetwood Inspiration.

11. The salesperson represented that he could get the home financed through Countrywide Home Loans, Inc. and represented the amount of the payment.

12. Thereafter, the salesperson took the Plaintiffs' personal information and took and application for credit, which it sent to Countrywide Home Loans, Inc. to finance the sale of the home.

13. The salesperson informed the Plaintiffs that he could arrange financing through Countrywide for the home and the lot.

14. (a) Countrywide arranged for an appraisal of Plaintiffs' without the home having been delivered. The appraisal obtained and relied upon by Countrywide stated that the home was to be "a double wide manufactured house that will be installed . . . with a block perimeter wall. No physical depreciation is observed. The plans do not indicate any functional inadequacies. No external obsolescence is observed."

(b) In fact, there was never any such intention to install a block perimeter wall.

(c) In fact the appraiser never was never able to make judgments based on observations of the home since it was not observed.

(d) The appraiser used as comparables two doublewides in the area, and inflated them by 50%.

15. Countrywide relied upon a May 2005 appraisal which was 2-3 months prior to the delivery of the home.

16. The appraisal valued the home and the land at $107,000.00, which was substantially above the actual market value.

Closing at Pizza Hut in Putnam County

17. Thereafter, the Plaintiffs were directed to meet an agent of Countrywide at the Pizza Hut in Hurricane, West Virginia to sign the papers on August 2, 2005.

18. The Plaintiffs had to bring their two boys with them to this "closing."

19. The closing was rushed and not conducted in an appropriate place where the Plaintiffs could ask questions about the transaction.

20. No attorney attended the closing or was made available for the Plaintiffs to ask questions.

21. The Defendant Countrywide originated a loan $103,337.00 secured by a Deed of Trust in Countrywide's name dated August 2, 2005 notarized by a notary from Milton, West Virginia and prepared by Countrywide agent Amy McCoy in its office in Scott Depot, West Virginia. The document falsely stated it was acknowledged in Fayette County, West Virginia.

2010 Loan Modification by BAC Home Loan Servicing, LP

22. On or around July 28, 2010, BAC Home Loan Servicing, LP increased the indebtedness to $142,636.70 which was secured by the August 2, 2005 Deed of Trust.

23. At the time of the modification the home and land were valued at less than 50% of the indebtedness.

24. The current market value of the doublewide is at or about $33,000.00.

Abusive and Illegal Loan Servicing

25. At some point, the loan and servicing were assigned to Defendant BANA.

26. James Shuff was injured at the workplace and had surgery in the spring of 2018, which caused a temporary change in the Plaintiffs' income.

27. The Plaintiffs contacted BANA and requested payment assistance with their loan based on the temporary change of income.

28. The Plaintiffs were provided a Trial Payment Plan, which provided that the Plaintiffs would make three monthly payments of $1,107 beginning in December 2018.

29. The Plaintiffs timely made their three monthly trial plan payment as required.

30. However, BANA represented to the Plaintiffs that it did not receive their third payment in February 2019. This was false. BANA's agent had signed for a certified receipt that it received the payment.

31. Lisa Shuff contacted BANA to inquire of the status of the loan modification within a few days of the last trial plan payment in early February 2019.

32. A BANA representative informed Ms. Shuff that they in fact received the payment, but if did not post and there was no way that the payment could be posted to the account.

33. BANA then invited the Plaintiffs to re-apply for another loan modification.

34. Over the course of 2019, BANA continually requested more information from the Plaintiffs to consider their loan modification application. BANA repeatedly requested documents it had previously been provided and unreasonably delayed consideration of their application.

35. During this time, BANA refused Plaintiffs' payments. BANA representatives informed Plaintiff in telephone conversations that it would not accept payments on the loan until the loan modification was approved.

36. BANA returned certain payments made by Plaintiffs during this time, rather than apply them against amounts due.

37. BANA then sought to foreclose on Plaintiffs' home by foreclosure sale date set for March 16, 2020 at 2:00 p.m. despite the Plaintiffs' willingness and ability to pay.

38. The Plaintiffs presently have the ability to pay their monthly loan payment, but BANA refuses to accept payments. They do not have the ability to pay the total amount of arrearage as BANA requires.

39. By letter dated March 16, 2020, Plaintiffs sent notice to BANA notifying it their violations of the West Virginia Consumer Credit and Protection Act, and providing them 45 days to cure the violations. Defendants are aware of the notice but have refused to continue the foreclosure sale.

Class Allegations

40. On March 13, 2020, President Donald J. Trump declared a national emergency arising out of the global pandemic brought on by the spread of the novel Coronavirus Disease, COVID-19.

41. On the same day, Governor Jim Justice ordered the closing of all West Virginia schools indefinitely to prevent the further spread of the COVID-19 virus.

42. The governor of the State of West Virginia, the National Center for Disease Control, and the President's task force have advised citizens to institute social distancing and other safety measures intended to curb the spread of the COVID-19 virus.

43. Given the circumstances, it is inappropriate to conduct non-judicial foreclosure sales because the public auctions cannot be conducted consistent with the principles of an appropriate time, place and manner of a commercially reasonable public auction, as required under West Virginia law and the parties' contracts.

44. Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class consists of all West Virginia borrowers whose loans are serviced by BANA or who have SIWPC as a foreclosure trustee, whose loans are set for foreclosure sale any time after that date 120 days following the filing of this action.

45. The requirements of Rule 23 are satisfied as follows:

 (a) The class is so numerous joinder of all members is impracticable;

 (b) There are questions of law and fact common to all members of the class; and

 (c) The named Plaintiffs' claims are typical of those of the class as a whole.

46. The Plaintiffs have displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interests of the class, and are represented by skillful and knowledgeable counsel. The relief sought by the named Plaintiffs will inure to the benefit of the class generally.

47. The Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive, declaratory and other relief appropriate for the class as a whole.

## CLAIMS FOR RELIEF

### COUNT I – TEMPORARY INJUNCTION TO STOP WEST VIRGINIA FORECLOSURES

48. The Plaintiffs incorporate the previous paragraphs by reference.

49. The parties' contract, the Deed of Trust, and West Virginia law provide that any foreclosure sale be conducted at a public auction.

50. It is axiomatic that the purpose of a public auction is to bring the best possible price for the property.

51. Commercially reasonable standards attendant to foreclosure sales provide that such sales be conducted at an appropriate time, place, and manner.

52. Given the national emergency caused by the COVD-19 outbreak, and the direction by government and health officials that citizens self-quarantine and practice social distancing to the extent possible, foreclosure sales during this crisis cannot meet commercially reasonable standards

53. A preliminary injunction is necessary in order to prevent the Defendants from conducting a foreclosure sale at a time and manner inconsistent with commercially reasonable standards.

54. The Plaintiffs have demonstrated they will suffer irreparable harm if the Court does not issue a preliminary injunction.

55. There is little if any harm to the defendant.

56. There is no other adequate remedy at law.

57. The plaintiffs are likely to succeed on the merits.

58. A preliminary injunction would be in the public interest.

**WHEREFORE**, the Plaintiffs respectfully request the following relief:

(a) That this Court issue a temporary restraining order enjoining the foreclosure sale on Plaintiffs' property set for March 16, 2020 at 2:00 p.m. until further order of the Court;

(b) That this Court issue an order to show cause why a temporary restraining order should not be entered halting all West Virginia foreclosures set by Defendants for the next 120 days.

## INDIVIDUAL CLAIMS

### COUNT II - FRAUD AS A DEFENSE TO CONTRACT

59. Plaintiff incorporates the preceding paragraphs by reference.

60. The loan was originated based on an inflated appraisal, which misrepresented to the Plaintiffs that their property was valued at approximately $107,000. This was false.

61. The actual value of the home and land was substantially less than this amount. The current value of the home is approximately $33,000.

62. The lender's misrepresentations and suppressions of the value of the Plaintiffs' home were material, and they were intentional, knowing or reckless.

63. The Plaintiff reasonably relied on the value as misrepresented to them by originating lender.

64. Had the Plaintiffs been aware that their property was not valued at $107,000, they would have never agreed to enter into the loan.

65. The Plaintiffs were damaged by their reliance on this belief in the honesty of the loan originator and appraiser.

**WHEREFORE**, the Plaintiffs respectfully request all appropriate equitable.

### COUNT III – CONTRACT DEFENSE OF ILLEGAL LOAN

66. Plaintiffs incorporates the preceding paragraphs by reference.,

67. The subject loan was willfully made with and modified to, a principal amount that exceeded the fair market value of the property on the date the residential loan was made in violation of West Virginia Code § 31-17-8(m)(8).

**WHEREFORE**, the Plaintiffs respectfully request all appropriate equitable relief.

### COUNT IV – COMMON LAW CONTRACT DEFENSE OF UNCONSCIONABLE CONTRACT

68. Plaintiffs incorporate the preceding paragraphs by reference.

69. Plaintiffs and the lender occupied dramatically unequal bargaining positions, including that:

(a) The Plaintiffs are unsophisticated consumers.

(b) The lender was a large national lender engaged in the business of making and servicing home-secured consumer credit transactions.

70. The lender unconscionably induced the Plaintiffs to enter into the loan by obtaining an inflated valuation of the home in 2005.

71. Defendant BANA unconscionably induced the Plaintiffs to enter into the modification in 2010 for $142,636.70, and amount that was more than twice the actual value of their home and land.

72. The loan and modification were unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct, and therefore was unenforceable.

**WHEREFORE**, the Plaintiffs respectfully request all appropriate equitable relief.

### COUNT V – FAILURE TO CREDIT PAYMENTS

73. Plaintiffs incorporate all of the preceding paragraphs by reference.

74. As previously alleged, BANA refused to credit payments from Plaintiffs against amounts due, in violation of West Virginia Code section 46A-2-115.

75. Plaintiffs have damaged as a result of BANA's failure to credit payments.

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

(a) The Court declare the Defendant's illegal practices as alleged herein;

(b) Actual damages and appropriate civil penalties for each violation pursuant to West Virginia Code sections 46A-5-101(1) & -106.

(c) Reasonable attorney's fees and the costs of this action;

(d) Such other relief as the Court may deem reasonable and just.

## COUNT VI – MISREPRESENTATIONS

76. Plaintiffs incorporate all of the preceding paragraphs by reference.

77. Defendant BANA is a debt collector as defined by section 46A-2-122 of the West Virginia Code and, thus, subject to the provisions of sections 46A-2-122 to 46A-2-129a of the West Virginia Code, regulating debt collection practices.

78. Defendant used fraudulent, deceptive, or misleading representations or means to collect or attempt to collect or to obtain information concerning Plaintiffs, including, but not limited to the following: (a) refusing Plaintiffs' payments and (b) misrepresenting the status of Plaintiffs' applications for loss mitigation.

79. Defendant's debt collection practices violate section 46A-2-127 of the West Virginia Code.

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

(a) Maximum civil penalties for each violation pursuant to sections 46A-5-101(1) and -106 of the West Virginia Code;

(b) Actual damages;

(c) Reasonable attorney's fees and the cost of this litigation; and

(d) Such other relief the Court deems equitable and just.

### COUNT VII – UNCONSCIONABLE DEBT COLLECTION

80. Plaintiffs incorporate all of the preceding paragraphs by reference.

81. Defendant BANA is a debt collector as defined by section 46A-2-122 of the West Virginia Code and, thus, subject to the provisions of sections 46A-2-122 to 46A-2-129a of the West Virginia Code, regulating debt collection practices.

82. Defendant has used unfair or unconscionable means in efforts to collect a debt, including, but not limited to the following:

(a) refusing payments, in order to collect from Plaintiffs through foreclosure or refinancing of the mortgage;

(b) causing Plaintiffs to fall into significant arrears, stating that it would consider them for assistance, and then failing to consider all available options to cure the arrears caused by Defendant's own conduct; and

(c) scheduling foreclosure on Plaintiffs' home in violation of commercially reasonable industry standards.

83. Defendant's debt collection practices violate section 46A-2-128 of the West Virginia Code.

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

(a) Maximum civil penalties for each violation pursuant to sections 46A-5-101(1) and -106 of the West Virginia Code;

(b) Actual damages;

(c)     Reasonable attorney's fees and the cost of this litigation; and

(d)     Such other relief the Court deems equitable and just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

    Plaintiffs,
**JAMES L. SHUFF and**
**LISA K. SHUFF**,
By Counsel:

/s/ Bren J. Pomponio
Bren J. Pomponio (WVSB #7774)
Daniel F. Hedges (WVSB # 1660)
Rachel J. Kincaid (WVSB # 13726)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-3144
Facsimile: (304) 344-3145
*Counsel for Plaintiff*