# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

JAMES L. SHUFF,
LISA K. SHUFF,

    Plaintiffs,

v.                                    CIVIL ACTION NO.  5:20-cv-00184

BANK OF AMERICA, N.A., individually
and doing business as BAC Home Loans, LP.,
and COUNTRYWIDE HOME LOANS, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Defendants Bank of America, N.A., ("BOA"), and Countrywide Home Loans, Inc.'s ("CHL"), Motion to Dismiss Plaintiffs' First Amended Complaint or, In the Alternative, to Strike Class Action Allegations [Doc. 18], filed June 15, 2020.[1] Following several extensions, Plaintiffs Mr. and Mrs. Shuff ("the Shuffs") responded in opposition on August 24, 2020 [Doc. 40], to which BOA and CHL replied on September 3, 2020. [Doc. 42].

## I.

In May 2005, the Shuffs visited a mobile home dealer in Oak Hill to purchase a new manufactured home. The Shuffs were shown a doublewide 2005 Fleetwood Inspiration. The salesperson informed the Shuffs that he could arrange financing through CHL for both the home

---

[1] Also pending is former Defendant Samuel I. White, P.C.'s ("SIWPC") Motion to Dismiss Plaintiffs' First Amended Class Action Complaint to Stop Foreclosures [Doc. 16], filed June 15, 2020. Inasmuch as SIWPC was dismissed from this action on June 24, 2020, the Court **DENIES AS MOOT** SIWPC's Motion to Dismiss [**Doc. 16**].

and the lot upon which they desired to place it. The salesperson gathered the Shuffs' personal information and application for credit. He then sent the package to CHL for processing.

CHL had the home appraised prior to its delivery. The appraisal stated (1) the home would be installed with a block perimeter wall, (2) no depreciation or obsolescence were observed, and (3) no functional inadequacies appeared in the plans. The Shuffs allege, however, that there was never any intention to install a block perimeter wall, nor could the appraiser make any judgments based on observations of the home inasmuch as he never observed it in place on the lot. The Shuffs assert that the appraiser instead used two doublewides in the area as comparables and inflated their values by fifty percent. The appraisal valued the home and lot at $107,000, substantially above the actual market value.

On August 2, 2005, the Shuffs and their two children met a CHL agent at the Pizza Hut in Hurricane to sign the papers and close. The closing was rushed, was not conducted in a location suitable for asking questions, and no attorney was present. The loan was in the amount of $103,337.00, secured by a deed of trust in CHL's name, and dated August 2, 2005. The document was notarized by a notary from Milton and prepared by CHL's agent, Amy McCoy, in CHL's office in Scott Depot. The Shuffs allege that the document falsely stated it was acknowledged in Fayette County.

On July 28, 2010, the loan was modified by CHL's successor servicer, BAC Home Loan Servicing, LP ("BAC"). BAC increased the secured indebtedness to $142,636.70. This adjustment resulted in the home and land being valued at less than fifty percent of the indebtedness. The current fair market value of the home is approximately $33,000.

The Shuffs instituted this action on March 16, 2020. They amended their Complaint on May 11, 2020, asserting a class claim to temporarily enjoin foreclosures in West Virginia given

the COVID-19 pandemic. They also asserted six other individual claims against the Defendants. The parties later stipulated to the dismissal of the class claim in Count I [Doc. 38]; the Shuffs then abandoned Counts IV, V, VI, and VII. [*See* Doc. 40]. The two remaining claims challenge the lien on the home. Count II alleges a fraud claim to avoid the contract, alleging that CHL misrepresented the value of their home at the 2005 origination. Count III arises under West Virginia Code § 31-17-8(m)(8), challenging the 2010 valuation increase to $142,636.70. Both counts seek "all appropriate equitable relief." [Doc. 12 at 9-10].

On June 15, 2020, CHL and BOA moved to dismiss. CHL and BOA contend that the Shuffs' fraud (Count II) and illegal loan (Count III) claims should be dismissed as (1) time barred by laches, and (2) failing to satisfy minimal pleading standards.[2] The Shuffs respond that their claims are both timely and plausible.

## II.

**A.    Governing Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ.

---

[2] CHL and BOA also seek dismissal for the Shuffs' putative "shot gun" pleading approach. It is true that "[a] complaint that 'fails to articulate claims with sufficient clarity to allow the defendant[s] to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief constitutes a 'shotgun pleading.'" *Knouse v. Primecare Medical of West Virginia*, 333 F. Supp. 3d 584, 592 (S.D.W. Va. 2018) (internal citations omitted). But the assertion here is meritless. Counts II and III plainly permit CHL and BOA to frame a responsive pleading.

P. 12(b)(6). Any defense presented under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss must be filed before any answer to the complaint is filed. Additionally, and as an aside, any answer must be filed within thirty days of the issuance of the summons, except for situations wherein that timeline is enlarged by the court. Fed. R. Civ. P. 12(a).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Wright v. N. Carolina*, 787 F.3d 256, 270 (4th Cir. 2015); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal quotation marks and citation omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly* 550 U.S. at 570.

The decision in *Iqbal* provides some additional markers concerning the plausibility

requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . . .'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555); *see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

A court's evaluation of a motion to dismiss is "generally limited to a review of the allegations of the complaint itself." *Goines v. Valley Community Service Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). However, "documents that are explicitly incorporated into the complaint by

5

reference . . . and those attached to the complaint as exhibits" may be considered. *Id.* at 166. Additionally, it is well established "that a court may consider documents … attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.4d 700, 705 (4th Cir. 2007)).

**B.     Timeliness of Claims**

Defendants contend that a "presumption of laches" applies inasmuch as both claims were filed well outside the analogous statute of limitations for the same actions at law, which they contend is two years. *See Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W. Va. 578, 583, 567 S.E.2d 294, 299 (2002) ("Under West Virginia law, claims in tort for negligence, professional negligence, and misrepresentation (fraudulent or negligent) are governed by a two-year statute of limitation."); *Robinson v. Quicken Loans Inc.*, 988 F.Supp.2d 615, 627 (S.D.W. Va. 2013) (concluding "the two-year, catch-all statute of limitations period contained in [W. Va. Code] § 55–2–12 governs" actions brought under W. Va. Code § 31-17-8). They additionally assert prejudice, claiming it will be difficult "to obtain reliable testimony from witnesses, and both the appraiser and the appraiser's records may no longer be available." [Doc. 42 at 8]. They also assert that they "would not have had to spend the last decade making the Shuffs' taxes and insurance payments with no prospect of repayment forthcoming" had the action been timely brought. [*Id.*]. Nor would they "have had to spend time filing unnecessary motions for relief in four bankruptcy cases that were subsequently dismissed." [*Id.*].

"Where a suit based on fraud is not for damages but seeks to rescind a writing or impose a trust or other equitable relief, it is not a common law action for fraud but is equitable in

nature. Consequently, the doctrine of laches is applicable rather than any specific statute of limitations period." Syl. Pt. 7, *Dunn v. Rockwell*, 225 W. Va. 43, 46, 689 S.E.2d 255, 258 (2009) (quoting Syl. Pt. 3, *Laurie v. Thomas*, 170 W. Va. 276, 278 294 S.E.2d 78, 79 (1982)); *see also White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (noting that laches is "properly relevant only where the claims presented may be characterized as equitable, rather than legal"). "Mere delay will not bar relief in equity on the ground of laches. 'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.'" Syl. Pt. 1, *State ex rel. Smith v. Abbot*, 187 W. Va. 261, 262, 418 S.E.2d 575, 576 (1992) (quoting Syl. Pt. 2, *Bank of Marlington v. McLaughlin*, 123 W. Va. 608, 609, 17 S.E.2d 213, 214 (1941)). "The elements of laches consist of (1) unreasonable delay and (2) prejudice." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996). "No rigid rule can be laid down as to what delay will constitute prejudice; every claim must depend upon its own circumstances." *Id.* Further, the Supreme Court of Appeals of West Virginia "has consistently emphasized the necessity of a showing that there has been a detrimental change of position in order to prove laches." *Maynard v. Board of Educ. of Wayne County*, 178 W. Va. 53, 59, 357 S.E.2d 246, 253 (1987) (quoted by *Dunn*, 689 S.E.2d at 267, n.11).

Additionally, "[l]aches and statute of limitations challenges are affirmative defenses." *Powell v. Bank of America, N.A.*, 842 F. Supp. 2d 966, 978 (S.D.W. Va. 2012) (citing Fed.R.Civ.P. 8(c)); *see also White*, 909 F.2d at 102 (stating "[l]aches is one of the affirmative defenses generally allowable under Fed.R.Civ.P. 8(c)"). As such, defendants bear the burden of proof. *See White*, 909 F.2d at 102. Importantly, "these defenses are often not appropriate for disposition under Rule 12(b)(6)." *Powell*, 842 F. Supp. 2d at 978. Indeed, "a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) . . . generally cannot reach the merits of an

affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The only exception, however, applies "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.* "The exception is strictly construed, requiring that all 'facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint.'" *Powell*, 824 F. Supp. 2d at 978 (quoting *Goodman*, 494 F.3d at 464) (internal citations omitted).

At this stage, the question "is whether *the face of the complaint* clearly indicates that plaintiffs brought the claim with such unreasonable delay that the defendants were prejudiced under the doctrine of laches." *Powell*, 842 F. Supp. 2d at 979 (emphasis in original). Strictly construed, the face of the Amended Complaint does not provide such a showing. Accordingly, it is inappropriate to resolve this affirmative defense at this stage of the proceedings. *See*, *Powell*, 842 F. Supp. 2d at 979 (concluding that resolution of the laches affirmative defense at the motion to dismiss stage was inappropriate); *see also Center for Individual Freedom, Inc. v. Ireland*, 613 F. Supp. 2d 777, 810 (S.D.W. Va. 2009) (concluding "laches is not a proper basis for a motion to dismiss because it relies on facts outside of the pleadings").

C.     **Sufficiency of Fraud Claim**

The Shuffs allege in Count II that CHL fraudulently represented to the Shuffs that their property was valued at approximately $107,000. CHL and BOA contend that this claim fails for lack of particularity under Rule 9(b). CHL and BOA also contend that the Shuffs' fraud claim is "fundamentally flawed in every aspect" given that they "fail to plead some elements of fraud altogether, and for others, do so only in conclusory boilerplate." [Doc. 19 at 14]. Specifically, they assert that dismissal is warranted inasmuch as the Shuffs fail to allege (1) the actual value of their

8

property at the time of the appraisal, (2) how or when the lender misrepresented the value of their home to them, (3) facts supporting that the alleged misrepresentation was material, and (4) any damages resulting from their alleged reliance on the appraisal.[3]

*Federal Rule of Civil Procedure* 9(b) requires fraud be pled with particularity. Our Court of Appeals has explained a "plaintiff must, at minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). "These facts are often referred to as the who, what, when, where, and how of the alleged fraud." *Id.* (internal quotations omitted). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

The elements for a fraud claim in West Virginia are as follows:

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false, and that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because

---

[3] Additionally, CHL and BOA contend that the Shuffs' reliance on the appraisal was not justified given that it was merely an opinion, not a guarantee of the value of the property, as expressed in the 2005 appraisal report and its accompanying disclosure attached to their reply. [*See* Docs. 42-1, 42-2]. They also contend that the Shuffs should have had the property inspected themselves. Inasmuch as this contention was raised for the first time in the Defendants' reply brief, it will not be considered. *See Moseley v. Banker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008) ("As a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived."); *Huskey v. Ethicon, Inc.*, 29 F.Supp.3d 736, 745 n.4 (S.D.W. Va 2014) ("[A]n argument raised for the first time in a reply brief or memorandum will not be considered."). Moreover, our Court of Appeals has rejected a similar argument, explaining "[a] lender that informs a borrower about how much her property is worth, whether required to do so or not, is under an obligation not to misrepresent that value." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013).

he relied on it.

*Folio v. City of Clarksburg*, 221 W. Va. 397, 404, 655 S.E.2d 143, 150 (2007) (internal citations omitted).

The Shuffs allege that (1) May 2005 was when the fraud occurred [Doc. 12 at ¶ 15]; (2) the appraisal was undertaken at the Shuffs' home, to which CHL sent an appraiser [*Id.* at ¶¶ 14-16]; (3) CHL fraudulently misrepresented the value of their property to be $107,000, when the actual value was substantially less [*Id.* at ¶ 60, 61]; (4) the identity of the individual making this misrepresentation was the appraiser and CHL [*Id.* at ¶ 16, 63]; (5) had they been aware that their property was not valued at $107,000, they would have never agreed to the loan [*Id.* at ¶ 64]; and (6) they were damaged as a result of their reliance upon the honesty of CHL and the appraiser. [*Id.* at ¶ 65]. *See McCauley*, 710 F.3d at 559 (concluding plaintiffs had adequately pled a similar fraud claim with sufficient particularity as required under Rule 9(b)).

While CHL and BOA are correct that the Shuffs fail to allege the actual value of the property at the time of the appraisal, the Shuffs nonetheless allege that "the actual value of the home and land was substantially less" than the appraised amount. [*Id.* at ¶ 61]. Moreover, the Shuffs allege that the current value of their home is approximately $33,000. [*Id.*] Taken as true, the current valuation provides a plausible basis to infer that CHL fraudulently misrepresented the value of the Shuffs' property to be $107,000 in 2005. Additionally, CHL and BOA mistakenly rely upon *Heavener v. Quicken Loans, Inc.*, 2013 WL 2444596, at *7 (N.D.W. Va. June 5, 2013). The decision in *Heavener* acknowledged the plaintiff's failure to allege the property's actual market value at the time of the fraudulent appraisal, but it was not the basis of dismissal. *Id.* Indeed, the fraud claim there pled contained an array of deficiencies. The Shuffs' Amended Complaint bears no resemblance thereto. Accordingly, the Shuffs have adequately pled a fraud claim.

10

D.   **Sufficiency of Illegal Loan Claim**

CHL and BOA assert that the *West Virginia Code* § 31-17-8(m)(8) claim fails on the merits. They assert the Shuffs failed to allege the fair market value of the property on the date of the loan modification. They assert the Shuffs "merely allege in conclusory fashion that the original appraisal valued their home 'substantially above the market value.'" [Doc. 19 at 18].

West Virginia Code § 31-17-8 pertinently provides as follows:

> (m) In making any primary or subordinate mortgage loan, a licensee may not, and a primary or subordinate mortgage lending transaction may not, contain terms which:
>
> . . . .
>
> (8) Secure a primary or subordinate mortgage loan in a principal amount that, when added to the aggregate total of the outstanding principal balances of all other primary or subordinate mortgage loans secured by the same property, exceeds the fair market value of the property on the date that the latest mortgage loan is made.

W. Va. Code § 31-17-8(m)(8).

The Amended Complaint alleges that the Shuffs were provided a $103,337.00 loan by CHL in 2005 based upon the $107,000 appraisal of the property. It is further alleged the loan was modified in 2010, increasing the indebtedness to $142,636.70. While the Amended Complaint does not allege the precise value of the property in 2010, it asserts that the home and land were "valued at less than 50% of the indebtedness" at the time of the modification. [Doc. 12 at ¶ 23]. Accordingly, the Shuffs have sufficiently pled adequate facts to place Defendants on notice of this claim.

**III.**

Based upon the foregoing discussion, the Court **DENIES** CHL and BOA's Motion

to Dismiss Plaintiffs' First Amended Complaint or, In the Alternative, to Strike Class Action Allegations [**Doc. 18**].

The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTERED: January 21, 2021



Frank W. Volk
United States District Judge